(34 Misc. Rep. 535.)

## HILL v. COATES.

(Supreme Court, Appellate Term.   April 22, 1901.)

1. AGENCY—AUTHORITY—CARE TAKER—HOUSE—REPAIRS.
   Where defendant, during his absence in Europe, left his house in the hands of a care taker, and a leak developed in a pipe in an unused portion of the building, which could have been temporarily stopped by turning a valve, the care taker had no authority to employ a plumber to make extensive repairs, worth $40 or more.

2. SAME—RATIFICATION.
   A care taker employed plaintiff to repair a leak in the plumbing of defendant's house during defendant's absence, and, on the subsequent receipt of the bill, defendant wrote plaintiff that he had the work inspected by another plumber, who considered it worth not over $40, and that he would pay that amount. Held, that defendant's letter constituted a ratification of the care taker's unauthorized act in employing plaintiff.

Appeal from municipal court, borough of Manhattan, Eighth district.

Action by William Hill against Stuart A. Coates. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before BISCHOFF, P. J., and CLARKE and LEVENTRITT, JJ.

William R. Hill, for appellant.
R. R. Rogers, for respondent.

LEVENTRITT, J.   This action was brought to recover the reasonable value of plumbing work done in the residence of defendant during his absence in Europe. Judgment was given for the defendant on the ground that the care taker who ordered it acted without authority. On this branch of the case we concur with the decision of the justice. The testimony shows that there was no authority in the care taker, Mrs. Underwood, as a matter of law, and that the plaintiff did not, in fact, perform the work relying on any apparent authority vested in her by virtue of the position she occupied, or the extent to which she was concededly permitted to represent her master's interests. The facts, as to which there is no substantial dispute, are as follows: During the defendant's absence on a vacation in Europe, he left his house, fully furnished, in charge of a Mrs.

Underwood, who is described as a "care taker." Testimony was admitted without objection that a Miss Barrow alone had authority to give instructions with regard to the house. A serious leak having developed in the main soil and waste pipe in the third-story bath room, Mrs. Underwood, according to the plaintiff's testimony, came to his place of business and "said there was a leak in Mr. Coates' house, at 15 East 36th St., and she asked me to go around and repair it." After he had examined the leak, he testifies, "she requested to telephone to Mr. Coates' office about it. A Mr. Wilson answered it, and said he did not want to be bothered with it, but go ahead and do whatever was necessary." Mrs. Underwood then told the plaintiff to go ahead, "as Mr. Wilson said so." On cross-examination he stated, "I telephoned to the office upon the care taker's advice that Mr. Wilson was representing Mr. Coates;" but in the next breath he says he did not telephone to Mr. Wilson to get authority to do the work, but merely to see whether the latter had been advised of the leak by Mrs. Underwood, but yet that he did rely, not on her authority "altogether," but "on them both," and that he thought he "had better" telephone to Mr. Coates' office "before doing anything." He also testified that the leak could have been stopped in five minutes by turning off the water, and that the job would be worth about 75 cents. No attempt was made on the argument to show any agency in Mr. Wilson. It appears that he was an officer in the same company in which the defendant was vice president, but whom he had no instructions or authority to represent in any of the latter's private affairs. So far as the care taker is concerned, I should feel disposed to hold, as a matter of law, that she had no authority to order the extensive repairs in question, especially in view of the plaintiff's testimony that the leak could have been stopped by turning off the water. A "care taker" is defined as one employed "in a building or on an estate, during the absence of the owner, to look after goods or property of any kind" (Cent. Dict. 823), or as "one employed to watch over or keep in order property, as a house, in the absence of the family" (Stand. Dict.). This, in the case of a city house left in charge of a person under the circumstances here disclosed, does not, in the absence of special authority, extend much beyond the duties of cleaning, keeping what is in the house in order, and of exercising watchfulness against trespass, intrusion, and waste. The duties are primarily to hold things in statu quo. A certain authority to repair is to be implied, but this, in a case like the one at bar, would seem to be strictly limited. It is confined, at the most, to what is immediately and imperatively necessary for the protection of the premises. There is nothing in the position of an ordinary care taker, as that term is usually understood, to justify any inference beyond that. In this case, where the mere turning off of the water in an apparently unused portion of the house would have prevented a deterioration or destruction, thus postponing until the owner's return the question of the advisability and extent of the permanent repairs, the care taker's authority, as a matter of law, is measured by the minimum demands of emergency. However, even should there be any question as to this interpretation of the law, a

construction recognizing a larger measure of authority would not avail the plaintiff, as the portions of his testimony cited conclusively show that from the outset he did not regard the care taker as authorized to bind her master, and that he partly looked elsewhere for authority, where there concededly was none.

If the liability of the defendant rested solely on the acts of the care taker, we could not disturb the judgment, but a more serious consideration for reversal is presented on the issue of ratification. There is no dispute but that the repairs were made in a workmanlike manner, and that they inured to the benefit of the defendant's property. There could, of course, be no ratification by an implied acceptance through silence, inasmuch as the repairs became part of the freehold, thus precluding restitution. It appears, however, that on July 10, 1900, the plaintiff sent a bill to the defendant, addressed to his house. The date of its receipt by the defendant, or that of his return home, is not revealed. On October 5th the defendant wrote to the plaintiff, implying due receipt of the bill, stating that upon his return he had obtained the opinion of another plumber as to the value of the work, who considered $40 an outside price for it. The letter concludes:

"I am, therefore, willing to pay this sum, provided you will give me a receipt in full for the work, but do not intend to go beyond this figure. Under the circumstances, I cannot but expect that you will modify your estimates to suit the case."

It will be observed that this letter does not resist payment of the plaintiff's claim on any theory of unauthorized employment, but merely because of excessive charge. Having written, it devolved upon him to take his stand one way or the other; but he could not take a position inconsistent with a disclaimer of ratification, and then deny liability after the plaintiff's refusal to accede to his terms. He was under no obligation to write or to pay, and his silence could not have been construed into an acceptance of the work. But he certainly could ratify the unauthorized act of his agent in cases of this sort. Courts have seized upon slight circumstances from which to spell out a ratification. A reasonable construction of the entire letter justifies this paraphrase:

"I accept the work. I do not intend to question the claim you allege against me, except as to its amount. That is exorbitant, and I refuse to pay more than forty dollars."

With the actual value of the repairs we have nothing to do. That will be matter for determination on the retrial.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. All concur.